Gregory F. Hauser (GH-3902)
ALSTON & BIRD LLP
90 Park Avenue
New York, New York  10016
212-210-9539
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

CHI IOTA COLONY OF ALPHA EPSILON PI
FRATERNITY, ALEX KHAYCHUK,
KONSTANTIN NOVODORSKY, VITALY
USHERENKO, GENNADY AKSELRUD,
ALEKSANDER BARANOV, DAVID BOROWIK,
ROMAN BURTMAN, DANIEL KANE, MIKE
LANTINO, JOSHUA MALEK, DANIEL
MARKOWITZ, EVAN McKIERNAN, RYAN
RICHMOND, BILLY RUPPERT, BRIAN
THOMSON, JONATHAN TORRES, STANISLAV
VERBITSKY and MOSHE ZEITOUNI,

                              Plaintiffs,

                vs.

CITY UNIVERSITY OF NEW YORK, MARLENE
SPRINGER, CAROL L. JACKSON, and CAROL
BROWER,

                              Defendants.

---

No.: 05 CV 2919 (DLI)(MDG)

## **FIRST AMENDED COMPLAINT**

Preliminary Statement

1.      This is an action under the First and Fourteenth Amendments to the United
States Constitution, the federal Civil Rights Act of 1871, 42 U.S.C. § 1983, Title IX of
the federal Civil Rights Act of 1972, 20 U.S.C. § 1681, the federal Declaratory Judgment
Act, 28 U.S.C. §§ 2201-02, the federal Civil Rights Attorney's Fee Awards Act, 42

U.S.C. § 1988, the Bill of Rights (Article I) of the New York State Constitution, and Article 4 of the New York Civil Rights Law, to obtain injunctive, monetary and declaratory relief as a result of defendants' violation of the plaintiffs' rights to freedom of association, freedom of speech, to equal protection under the laws and to be free of discrimination on the basis of sex.

### Jurisdiction and Venue

2.     The Court has jurisdiction of this action pursuant to (a) 28 U.S.C. § 1331, in that it arises under the Constitution and laws of the United States, (b) 28 U.S.C. § 1343(a), in that it seeks to recover damages and to secure equitable and other relief under Acts of Congress providing for the protection of civil rights, and (c) 28 U.S.C. § 1367(a) in that the state law claims are so related to the federal law claims of which this court has original jurisdiction that they form part of the same case and controversy.

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that (a) one or more of the defendants reside in this district and, upon information and belief, all defendants reside in the State of New York, and/or (b) a substantial part of the events and omissions giving rise to the claims occurred in this district, more specifically, in Richmond County, New York (see 28 U.S.C. § 112(c)).

### Allegations of Fact

Parties

4.     Plaintiff Chi Iota Colony of Alpha Epsilon Pi Fraternity (hereinafter the "Chi Iota Colony" or the "Fraternity") is an unincorporated association made up entirely and exclusively of male college students.  Chi Iota Colony is a college social fraternity

- 2 -

group, affiliated with Alpha Epsilon Fraternity, Inc. ("AEPi"), and in the process of becoming a chapter of AEPi.

5.      Plaintiff Alex Khaychuk is a male student at the College of Staten Island and a member and the president of the Chi Iota Colony.

6.      Plaintiff Konstantin Novodorsky is a male student at the College of Staten Island and a member and the vice president of the Chi Iota Colony.

7.      Plaintiff Vitaly Usherenko is a male student at the College of Staten Island and a member and the treasurer of the Chi Iota Colony.

8.      Plaintiff Gennady Akselrud is a male student at the College of Staten Island and a member of the Chi Iota Colony.

9.      Plaintiff Aleksander Baranov is a male student at the College of Staten Island and a member of the Chi Iota Colony.

10.     Plaintiff David Borowik is a male student at the College of Staten Island and a member of the Chi Iota Colony.

11.     Plaintiff Roman Burtman is a male student at the College of Staten Island and a member of the Chi Ioata Colony.

12.     Plaintiff Daniel Kane is a male student at the College of Staten Island and a member of the Chi Iota Colony.

13.     Plaintiff Mike Lantino is a male student at the College of Staten Island and a member of the Chi Iota Colony.

14.     Plaintiff Joshua Malek is a male student at the College of Staten Island and a member of the Chi Iota Colony.

15.     Plaintiff Daniel Markowitz is a male student at the College of Staten Island and a member of the Chi Iota Colony.

16.     Plaintiff Evan McKiernan is a male student at the College of Staten Island and a member of the Chi Iota Colony.

17.     Plaintiff Ryan Richmond is a male student at the College of Staten Island and a member of the Chi Iota Colony.

18.     Plaintiff Billy Ruppert is a male student at the College of Staten Island and a member of the Chi Iota Colony.

19.     Plaintiff Brian Thomson is a male student at the College of Staten Island and a member of the Chi Iota Colony.

20.     Plaintiff Jonathan Torres is a male student at the College of Staten Island and a member of the Chi Iota Colony.

21.     Plaintiff Stanislav Verbitsky is a male student at the College of Staten Island and a member of the Chi Iota Colony.

22.     Plaintiff Moshe Zeitouni is a male student at the College of Staten Island and a member of the Chi Iota Colony.

NYC01/7775756v1

23.     The foregoing Messrs. Khaychuk through Verbitsky are hereinafter referred to as the individual Plaintiffs.

24.     Defendant City University of New York ("CUNY") is a public university and a body corporate established, organized and operated pursuant to New York Education Law, Title VII, Art. 125, §§ 6201 *et seq.*, financed largely by the State and City of New York, *id.* § 6221(D), with its principal place of business at 535 East 80th Street, in the City, County and State of New York, and operating many individual campuses throughout all five boroughs/counties within the City of New York.

25.     The College of Staten Island ("CSI") is a senior college unit of CUNY, N.Y. Education L. § 6202(5), located at 2800 Victory Boulevard, Staten Island, Richmond County, New York.

26.     Defendant Marlene Springer is the President of CSI and is sued in both her official and individual capacities.  Upon information and belief, defendant Springer has ultimate control over and responsibility for, *inter alia*, CSI's policies and procedures in non-academic areas, including those applicable to student organizations such as those at issue in this action, including the CSI Student Government and social fraternities.

27.     Defendant Carol L. Jackson is the Vice President for Student Affairs of CSI and is sued in both her official and individual capacities.  CSI's Division of Student Affairs, over which Defendant Jackson presides and as to which she reports to Defendant Springer, includes the Office of Student Life, and, upon information and belief, Defendant Jackson's responsibilities include control of that office and formulation of, oversight of, some level of control over, and the administration and enforcement of CSI's

- 5 -

policies and procedures applicable to, *inter alia*, student organizations such as those at issue in this action, including the CSI Student Government and social fraternities.

28.     Defendant Carol Brower is the Director of the Office of Student Life at CSI and is sued in her official capacity.  Upon information and belief, Defendant Brower's responsibilities include administration and enforcement of CSI's policies and procedures applicable to student organizations, including the CSI Student Government and social fraternities.

29.     The CSI Student Government is an entity established by CSI, with its principal place of business at CSI, to which, upon information and belief, CSI has delegated certain authority over student organizations at CSI.  Pursuant to the CUNY By-Laws, Article XV, section 15.1, the CSI Student Government is bound to obey, *inter alia*, the laws of the city, state and nation, and the policies, regulations and orders of CSI.

The Fraternity

30.     AEPi is an international college social fraternity.  Called "international" because it includes chapters at multiple college or university campus in the United States and Canada, AEPi includes chapters and colonies at almost 125 campuses, thousands of undergraduate members, and many tens of thousands of alumni members, as well as alumni clubs and faculty, honorary and associate members.  A copy of AEPi's Constitution is annexed as Exhibit 1; see Art. I § 1 at 2.

31.     A fraternity colony is a newly formed group that has as its goal, and is in the process of, becoming a fraternity chapter by meeting the requirements established by the larger entity from which it seeks chapter status.

- 6 -

32.     In or about August 2002, a CSI student at a Hillel leaders event approached AEPi's booth and indicated an interest in founding a chapter of AEPi at CSI. That student recruited several other CSI students after the Fall semester started and, in or about October 2002, contacted AEPi international headquarters and a meeting with a member of AEPi's headquarters staff to begin the colonization process, as part of which the individual Plaintiffs became members of the Chi Iota Colony.

33.     Plaintiffs have chosen to affiliate with AEPi because of its nature, values and purposes.

34.     The Fraternity and AEPi are both non-profit organizations.

35.     The Constitution of AEPi authorizes each of its undergraduate colonies and chapters to confer membership upon only male college or university students.  Ex. 1 Art. I § 1(a)(1) at 2.

36.     If the Fraternity is to maintain its affiliation with, and eventually meet its goal of becoming a chapter of, AEPi, it may have as members only male students.

37.     The Fraternity has established its purposes and membership requirements consistent with those of AEPi. *Compare* Ex. 1 Preamble at 2, *with* the Preamble to the Fraternity's By-laws, a copy of which is included as a part of Exhibit 2.

38.     AEPi prefers that its colonies and chapters have recognition from the host colleges and universities.

The Intimate Nature of the Fraternity

39.     The Fraternity is a single-sex, all-male social organization that selects its own members consistent with its purposes and on other bases as the members, currently the individual Plaintiffs, decide.

40.     Upon information and belief, CSI has approximately 12,500 students.

41.     The Fraternity has eighteen CSI student members, a group size which is relatively small compared to the overall size of CSI's student body.

42.     Upon information and belief, the average sized undergraduate fraternity chapter in the United States has fewer than fifty members, only approximately five percent exceed eighty members, and, at an urban and heavily commuter campus such as CSI, it is unusual for a fraternity chapter to exceed fifty members.  Accordingly, while the Fraternity has placed no limit on its membership size, it is unlikely to exceed fifty members, which would still be relatively small compared to the overall size of CSI's student body.

43.     The Fraternity exercises a high degree of selectivity in decisions to begin and to maintain affiliation by individuals with the Fraternity, and prospective members must exercise their own selectivity in deciding to become members by expressing an interest and willingness to commit themselves to the purposes of the Fraternity.

44.     No man who has already joined another general college social fraternity may become a member of AEPi, and the Constitution of AEPi states that the conferral of membership is for life unless a man is expelled for disciplinary reasons.  Ex. 1, Art. I §§

- 8 -

2-3 at 3.  Thus, it is contemplated that membership in AEPi is essentially permanent and precludes membership in any other college social fraternity, further necessitating selectivity in both invitations to membership issued by the Fraternity and in decisions whether to accept membership by those who receive such invitations.

45.     Rush is the name for a process by which a fraternity group communicates with prospective members and recruits and selects new members and during which prospective members evaluate the group and their own interest in joining.  See also Chapter 6 of AEPi's membership manual, relevant portions of which are annexed as Exhibit 3, at 51-55.

46.     Pledging is the name for a period of transition between (a) the acceptance of an invitation to membership in a fraternity chapter/colony and (b) the conferral of full membership.  Pledging, also called pledgeship or the pledge period, is typically of several weeks duration.  In AEPi, it is expected that the pledge period be of either two and one half weeks or five weeks duration, and it is five weeks long at the Chi Iota Colony.  During pledgeship, the new, transitional member, or pledge, is taught about the fraternity's history, purposes, values, and operations in details and he and the members get to know each other better.  *See also* Ex. 3 at 23-41.  During pledgeship, it is relatively easy for the pledge or the fraternity chapter/colony to end the process of his becoming a member; after the close of pledgeship and the private ceremony in which full membership is bestowed, it requires an elaborate and formal process, upon a limited number of grounds, for a member to be expelled.  *Compare* Ex. 3 at 40-41 *with* Ex. 1, Art. XI § 2 at 15-16.

47.     Rushing and pledgeship are essential parts of the Fraternity's selectivity and maintenance of the mutual compatibility and congeniality among its members. Rushing and pledging are designed and intended to insure to the extent possible that the only men who become members are those who the group is certain it wishes to become full members and who are themselves certain that they wish to become full members of the Fraternity.

48.     Neither rushing nor pledgeship properly includes hazing, and AEPi prohibits hazing in any AEPi activities.  Ex. 1, Art. XII §§ 1-2 at 16; Ex. 3 at 27-28 & 102.

49.     The initial invitation to become a pledge at the Chi Iota Colony is made by the Executive Board of the Fraternity, made up of five elected officers, after consultation with the membership.

50.     One of the Fraternity's purposes is a lifelong interpersonal bond termed brotherhood, and achieving that purpose requires that the Fraternity be able to exercise selectivity in membership.

51.     Selectivity enables the Fraternity to be an organization in which the relationships among the individual plaintiffs, the members, are continuous, close and personal.  This brotherhood results in deep attachments and commitments to the other members of the Fraternity among whom is shared a community of thoughts, experiences, beliefs and distinctly personal aspects of their lives.

- 10 -

52.     The selective, single-sex, all-male nature of the Fraternity is essential to achieving and maintaining the congeniality, cohesion and stability that enable it to function as a surrogate family and to meet social, emotional and cultural needs of its members.

53.     Furthermore, non-platonic, *i.e.*, romantic relationships between members and the inevitable jealousies and other conflicts would pose a grave threat to the group's brotherhood, thus, maintaining the Fraternity's brotherhood is best achieved by maintaining an all-male membership.

54.     The purposes of AEPi, from the Preamble to its Constitution, include "lasting friendships . . . [and] [t]he pursuits of those benefits which derive . . . from pleasant application to . . . general social undertakings."

55.     A primary purpose of the Fraternity is congeniality, and the Fraternity's members, *i.e.*, the individual Plaintiffs, must therefore be free to consider social compatibility in deciding whether to invite a man to become a member and to reject as members those who, in the view of the current members, would be socially incompatible or otherwise pose a threat to the congeniality within the Fraternity.

56.     The individual Plaintiffs consider a host of factors in addition to congeniality and social compatibility in deciding whether to invite a man to become a member, information that is obtained and evaluated during rush, including the man's reasons for being interested in joining (including the level of interest and potential for commitment to AEPi's values and purposes), existing relationships with members, shared personal affinities, his potential for loyalty to the Fraternity and other members, an

- 11 -

assessment of his character, the perceived potential for mutual affection, admiration and respect among them, and the perceived potential to work together with them in personal social and emotional development and in the Fraternity's activities and programs.

57.     Adhering to AEPi's purposes and continuing and developing the Plaintiffs' desired affiliation with AEPi necessitate that the Fraternity continue its selectivity and adhere to single-sex, all-male membership.

58.     The Fraternity excludes non-members from: meetings at which it discusses whether to offer membership to a man; meetings at which the ceremony commencing pledgeship is performed; meetings at which the ceremony initiating a man into full membership is performed; meetings at which it considers terminating a man's membership; and from certain other business meetings.

The Expressive Nature of the Fraternity

59.     AEPi was founded as a non-discriminatory fraternity for Jewish college men.  Today, as can be seen, *inter alia*, on the front page of AEPi's web site, www.aepi.org (selected pages from which are attached as Exhibit 4), it proclaims itself as "the Jewish Fraternity of North America".  AEPi's mission statement, which is available as part of the same web site and a copy of which is included in Exhibit 4, expounds in detail on the ties between AEPi and the Jewish community and culture.  Among the specific purposes set forth in the mission statement for AEPi is the development of "leadership for the future of the American Jewish community" and to help "reverse the growing trend among our young people to abandon Judaism at this critical time."  More generally, the mission statement concludes: "our basic purpose is to provide the

- 12 -

opportunity for a Jewish man to be able to join a Jewish organization whose purpose is not specifically religious, but rather social and cultural in nature." AEPi maintains partnerships with six other non-profit organizations, which are listed on AEPi's web site (a copy of the page is included in Exhibit 4); all but one are Jewish in nature. AEPi recommends several philanthropies to its chapters/colonies, which are also listed on its web site (a copy of the page is included in Exhibit 4); all are for the benefit of causes that are part of the Jewish community. AEPi's membership manual shows the strongly Jewish nature of AEPi. Ex. 3 at 5, 7-8, 13-14, 19-22, 29, 34, 45, 47, 52-54 & 78.

60. AEPi's purposes and values also include many others that have traditionally been the purposes and values of college social fraternities: brotherhood; character; learning and scholarship; leadership, financial responsibility; social/community service; campus participation; and personal growth, including social development. Ex. 3 at 5-8, 27, 34-35, 38-39, 42-45, 46-48, 56-63 & 69-73, as well as a set that AEPi has chosen for its self: honesty; perseverance; mutual helpfulness; faith; and humility, *id.* at 25-26, and "personal perfection, a reverence for God and an honorable life devoted to the ideal of service to all mankind; lasting friendships and the attainment of nobility of action and better understanding among all faiths; The pursuit of those benefits which derive from vigorous participation in university and college activities and from pleasant application to literary, cultural and general social undertakings; and The unbiased judgment of our fellows, not by their rank nor worldly goods, but by their deeds and their worth as men" Ex. 1, Preamble at 2. AEPi expects pledge education to include inculcation of these values and purposes. Ex. 3 at 29 & 35.

NYC01/7775756v1

61.     Among the Fraternity's purposes and activities are the inculcation of the traditional values of men's college social fraternities generally and of AEPi specifically, community service, and the expression of Jewish culture.

62.     The Fraternity members are, for the most part, non-practicing Jews.  They, including pledge members, meet weekly with a Rabbi from the Jewish Awareness Movement ("JAM") at CSI to learn about Jewish tradition, history and practices.  They have been involved in other JAM activities, including building a sukkah for the Jewish celebration of Sukkot.  The Fraternity uses contacts made at JAM meetings to recruit new members.  The Fraternity is currently planning a future fund raising activity for the benefit of Ethiopian Jews.

63.     The purpose of philanthropic and community service is to improve morals, ethics and citizenship, and to instill and to model a desire for self-improvement and a commitment to a larger community.

64.     Rush is the time when the expressive purposes of the Fraternity are communicated to prospective members and each prospective member's interest in the expressive purposes of the Fraternity is evaluated, and pledgeship is the time when the expressive purposes of the Fraternity are taught and the commitment of each prospective member to those purposes is sought, developed and tested.

65.     Adhering to and accomplishing the expressive purposes of AEPi and the Fraternity necessitate that the Fraternity continue its selectivity to insure that only those committed to those purposes become members, so that there is no dilution or lessening of

- 14 -

the Fraternity's commitment to those purposes and its ability to adhere and to accomplish them.

CSI Recognition of Student Clubs and Organizations

66.     On a page that is part of CSI's web site, the CSI proclaims to prospective students that "we are determined to serve your needs." www.csi.cuny.edu/prospectivestudents/index.html.

67.     On its page that is part of CSI's web site, the CSI Division of Student Affairs claims that its programs and services "are provided by professionals committed to student's [*sic*] intellectual, emotional, social, cultural, and recreational development." www.csi.cuny.edu/studentaffairs.

68.     On its page that is part of CSI's web site, the CSI Office of Student Life states that its "goal is to enhance the CSI students' education by providing a variety of co-curricular opportunities designed to facilitate and encourage student responsibility for their own intellectual, social, emotional, spiritual and cultural identity." www.csi.cuny.edu/currentstudents/studentlife.

69.     Social organizations, such as social fraternities, are a means by which college students take responsibility for their own social and emotional development and identity.

70.     The individual Plaintiffs have formed and joined the Fraternity for, *inter alia*, their social needs, development, identity and benefits.

71.     The Fraternity and its affiliation with AEPi are a means for the individual

Plaintiffs to take responsibility for their own spiritual and cultural development and

identity.

72.     CSI and the other Defendants maintain a program by which CSI student

organizations are officially recognized by granting them a charter.  According to CSI's

Club Chartering Packet, a copy of which is annexed as Exhibit 5, at 3:

> The CSI Student Government and the Office of Student Life encourage
> students to charter clubs to design and implement programs, events, and
> activities which support, enrich, extend, and amplify the goals of CSI's
> educational mission.  Involvement in these types of groups present [*sic*]
> students with the opportunity to broaden their learning, obtain leadership
> and interpersonal skills, and develop a commitment to service.  Student
> participation in such organizations attracts new students to our campus and
> helps them to be an active part of it.  Student clubs should strengthen
> campus-community relations, improve inter-institutional communications,
> and facilitate students' acquisition of skills, which will be transferable to
> other areas of their lives.

73.     According to the same packet, at 3:

All clubs at the College of Staten Island must be chartered by the CSI
Student Government and officially recognized by the Office of Student
Life on a yearly basis.

The benefits and privileges afforded to recognized student clubs include:
> › The use of CSI facilities and services
> › Eligibility for insurance through the CSI Association
> › The right to use the College of Staten Island name in conjunction
with the name of your group
> › The right to solicit contributions, underwriting and advertising
outside the College (provided proper College guidelines and procedures
are followed and only with the authorization of the Director of Student
Life)
> › The use of all CSI approved bulletin boards to publicize events
> › Inclusion of events in monthly calendars including CLUENEWS
upon approval by the Office of Student Life
> › To arrange news coverage for events of public interest through
the Office of Student Life
> › The opportunity to request a desk, or workspace in the Campus
Center, or weekly meeting space in one of the academic buildings

- 16 -

&rsaquo; The opportunity to apply for special funding through the CSI Student Government
&rsaquo; the exclusive use of a centralized mailbox located in Campus Center (1C), room 207.

74.    These are substantial rights and privileges accorded only to groups recognized by CSI and chartered by the CSI Student Government. These rights and privileges are a substantial support to, and their denial a substantial burden on, the formation, existence, maintenance and growth of student organizations at CSI.

75.    The CSI Office of Student Life makes the final decision on recognition. Exhibit 5 at 4. Thus, upon information and belief, the decision is under the control of Defendants Springer, Jackson and Brower.

76.    CSI has extensive requirements for eligibility for recognition. Exhibit 5 at 5-6. Of particular relevance, and specifically at issue in this action, are three of those requirements (*id.* at 6):

> In order for an organization to be officially recognized at the College of Staten Island, membership and participation in it must be available to all eligible students at the College. In addition, in order to be recognized, each organization must agree not to discriminate on the basis of . . . . gender . . . .

> Furthermore, the practices commonly referred to as pledging and rushing are not permitted.

77.    According to the CSI web site, CSI has recognized over 45 clubs and organizations. www.csi.cuny.edu/currentstudents/studentlife/clubs.html.

- 17 -

CSI's Denial of Recognition to the Fraternity

78.     On or about March 3, 2004, the Fraternity applied for recognition by CSI by filing an application to charter and supporting materials. A copy of the application and supporting materials is annexed as Exhibit 2.

79.     On or about March 29, 2004, Defendant Brower notified the Fraternity that recognition would be denied because the Fraternity excludes women and practices rushing and pledging. A copy of that notice is annexed as Exhibit 6.

80.     Over the course of the next several months, attorneys for AEPi and the Fraternity several times sought recognition of the Fraternity in writing, and an attorney for CSI repeatedly and consistently refused a change of CSI's positon. The last letter, from the undersigned to the General Counsel of CUNY, has gone unanswered for months. Copies of the correspondence are annexed as Exhibit 7.

81.     Defendants' refusal to recognize the Fraternity and to grant it a charter has deprived the Fraternity and the individual Plaintiffs of the aforementioned benefits and privileges of recognition.

82.     To become and to remain a fully viable entity in a campus community in which new students enter on a regular basis, the Fraternity must possess the means of communicating with these new students, as well as others, about the Fraternity's existence, its purposes and the opportunities for membership, and its ability to do so and to pursue its stated purposes is substantially burdened and limited by denial of access to the customary channels for communicating with the campus community.

83.     To become and to remain a fully viable entity at a largely commuter campus, the Fraternity must have access to campus facilities for the convenience of its members, of those whom they would like to interest in membership, and of those who might be interested in becoming members.

84.     The Fraternity's ability to recruit members at CSI is particularly hindered by lack of access to CSI bulletin boards, to desk space in the Campus Center, and to meeting space in a CSI building, and the inability to participate in freshman orientation programs, all of which are accorded to recognized student organizations.

85.     Defendants' refusal to recognize the Fraternity and to grant it a charter is a burden on the Plaintiffs' right to recruit additional members and to operate and denies them rights and privileges necessary to the maintenance of the Fraternity's existence and its growth.

86.     Defendants' refusal to recognize the Fraternity and to grant it a charter is a burden on the ability of CSI students not already members of the Fraternity who might have an interest in the Fraternity and membership from learning about them and considering whether to join the Fraternity.

87.     The requirement that all CSI student organizations maintain their membership open to all students is an imposition by Defendants of a single, restrictive, rigid, intolerant ideology and philosophy concerning student organizations, and the refusal to recognize student organizations with a selective and/or single-sex membership is intended to suppress an ideology or philosophy that would tolerate, condone, endorse or support such organizations.

- 19 -

88.     The Fraternity has complied with all reasonable housekeeping rules of CSI.

89.     Any additional attempt by the Fraternity to apply for recognition and chartering at CSI would be futile since the Fraternity remains a selective, single-sex organization.

90.     Upon information and belief, Defendants have intentionally denied the Fraternity and its members, the individual Plaintiffs, the rights and privileges that flow from recognition and chartering at CSI because they have chosen to be a selective association, a philosophy of which Defendants disapprove and a philosophy and state of existence that they desire to suppress.

91.     Upon information and belief, Defendants have intentionally denied the Fraternity and its members, the individual Plaintiffs, the rights and privileges that flow from recognition and chartering by CSI because they have chosen to be single-sex, all-male association, a philosophy of which Defendants disapprove and a philosophy and a state of existence that they desire to suppress.

92.     Upon information and belief, Defendants have intentionally denied the Fraternity and its members, the individual Plaintiffs, the rights and privileges that flow from recognition and chartering a CSI because they have chosen to engage in rushing and pledging as means to be selective, to communicate and to fulfill their chosen purposes and goals, to inculcate their values, and to insure that all members are fully committed to their purposes and goals, including the expression of Jewish culture.

- 20 -

93.     Among the actual and intended effects of Defendants' refusal to recognize and to charter the Fraternity is the deterrence of the Fraternity and the individual Plaintiffs from associating and communicating with each other and with other CSI students and of other CSI students from associating and communicating with the Plaintiffs.

Additional Burdens Imposed at CSI on Associational Rights

94.     They are extensive regulations imposed by Defendants on CSI student organizations, including: the mandatory submission of minutes of all business meetings to the Office of Student Life and the CSI Student Government; the publicizing of business meetings; that all such meetings be open to all CSI students; and a prohibition on charging dues.  Exhibit 5 at 8.

95.     These rules limit the number and nature of CSI student organizations' activities, are an invasion of such organizations' right to associational privacy and an infringement of their right to associational autonomy, constitute compelled speech, and as such are a burden on their rights to freedom of association and speech.

General Constitutional and Legal Principles

96.     The very essence of the First Amendment to the U.S. Constitution and of Article I § 9(1) of the New York State Constitution is that each individual makes his own decision as to whether joining an organization would be beneficial to him, and the state and its agents, such as Defendants, are forbidden by the Constitution and civil rights laws from interfering with, burdening, limiting, infringing or usurping that right to choose.

97.     Once certain privileges have been granted to one or more student organizations at CSI, the Fourteenth Amendment to the U.S. Constitution and Article I § 11 of the New York State Constitution require that the privileges be available to all organizations on an equal basis.

98.     Under the Constitutions and laws of the United States and of New York State, it is the associational and privacy right and protected liberty of each person to choose his social intimates based on his personal values and other preferences or any other basis he sees fit.

99.     The constitutional right to freedom of association under the U.S. and New York State Constitutions presupposes a freedom not to associate, and defendants therefore may not condition any right or privilege it grants to its student organizations on requiring them to accept members they do not desire.

100.     The constitutional right to freedom of expressive association entitles an organization and its members to restrict membership to the extent they decide necessary to further and to protect the values and purposes of the organization, including the utilization of the processes they decide appropriate to evaluate and to develop prospective members, so that those whose membership could inhibit the organization's expression of its purposes can be excluded.

101.     The constitutional right to freedom of speech established by the First Amendment to the U.S. Constitution and Article I § 8 of the New York State Constitution requires that an organization and its members be free both to communicate with prospective members about the organization and membership without regulation or

- 22 -

restriction of the content of such communication, and to be free of any time, place or manner restriction and of any required communication to any entity concerning the organization that does not meet a sufficiently legitimate purpose.

102.    Therefore, the Fraternity has a right to exist, the Fraternity and its members have a right to recruit new members on a selective, single-sex, all-male basis, the eligible students of CSI have a right to decide for themselves whether to join organizations such as the Fraternity, the Fraternity has a right to determine the processes by which it recruits and chooses members and develops and confers membership, and the Fraternity and its members have a right to have the Fraternity recognized and chartered at CSI to enable their exercise of their constitutional and legal rights to freedom of intimate and expressive association and of speech and, in view of the fact that CSI extends recognition and charter to other student organizations, also their right to equal protection of the laws.

103.    As a matter of federal and state constitutional and civil rights law, it is Defendants' particularly heavy burden to justify their denial of recognition and a charter to the Fraternity, which constitutes an unwarranted prior restraint upon the Plaintiffs' exercise of their federal and state constitutional rights, justification of which Defendants are incapable.

104.    Disapproval of an association's philosophy, including specifically a desire to suppress a philosophy of membership selectivity, a single-sex, all-male membership, and membership practices such as rushing and pledging, is a content and viewpoint based

restriction on the exercise of constitutional rights and is therefore not a legally valid basis

for a refusal by Defendants to recognize and to charter a student group at CSI.

105.    It is not a lawful mission, process, or function of a public institution of

higher learning or its agents to prohibit the exercise of any rights guaranteed by the

Constitution or a law of the United States or of New York State to a student or any other

member of the academic community. Indeed, the CUNY By-Laws, Article XV, section

15.1, states that CUNY's regulatory power over students and student organizations,

associations, clubs and chapters "is limited by the right of students to the freedoms of

speech, press, assembly and petition as applied to others in the academic community and

to citizens generally."

106.    Section 1011 of Title 20 of the United States Code establishes the public

policy that "no student attending an institution of higher education ... should, on the basis

of participation in ... protected association, be excluded from participation in, be denied

the benefits of, or be subjected to discrimination or official sanction under any education

program, activity, or division of the institution directly or indirectly receiving financial

assistance under this chapter [Higher Education Resources and Student Assistance, 20

U.S.C. § 1001 *et seq.* ]", and that "'protected association' means the joining, assembling,

and residing with others that is protected under the first and 14th amendments to the

Constitution ...."

107.    Section 1681(a)(b) of Title 20 of the United States Code establishes that

the membership practices of college social fraternities and sororities are not

discriminatory under Title IX of the federal Civil Rights Act of 1972.

- 24 -

108.    In Section 313(1) of the Education Law of the State of New York, "[i]t is hereby declared to be the policy of the state that the American ideal of equality of opportunity requires that students . . . be given access to all the educational programs and courses operated or provided by [educational] institutions without regard to race, color, sex, religion, creed, marital status, age or national origin . . . ."

109.    Section 53 of the New York Civil Rights Law demonstrates that the public policy of the State of New York is to avoid undue interference with the membership practices of college fraternities and sororities.

110.    CSI claims to be "an equal Opportunity and Affirmative Action institution" and that it "does not discriminate on the basis of [*inter alia*] sex, . . . religion, . . . or ethnic origin, . . . in its . . . access to programs and administration of educational policies." www.csi.cuny.edu/studentaffairs/rightsandresponsibilities.html; Appendix vi. Yet, when a group of CSI students, the individual Plaintiffs, decided to form a group, the Fraternity, on a single-sex basis and selectivity based upon, *inter alia*, religion and ethnic origin, Defendants have refused to recognize the group by granting it a charter.

111.    Among the effects of Defendants' refusal to recognize and to charter the Fraternity is to deter CSI students from engaging in constitutionally protected intimate and expressive association and speech.

112.    Loss of freedom of association or speech or of the equal protection of the law for even minimal periods of time constitutes irreparable injury, which Plaintiffs have therefore suffered.  This is even more the case for students and student organizations at a

- 25 -

college or university, *i.e.*, in this case, the Plaintiffs, since their time as college or university students is limited.

113.    Plaintiffs have no adequate remedy at law.

114.    The harm to Plaintiffs from a continued lack of recognition at CSI is great since it deprives them of clear constitutional and legal rights and threatens the existence and growth of the Fraternity.

115.    There would be no disruption to CSI or any other harm to any of the Defendants from recognition of the Fraternity at CSI, since it would simply result in fully including in CSI's campus life a type of organization that has been part of college and university life in the United States for over two centuries and that would be recognized at the vast majority of colleges and universities in the United States, including, upon information and belief, at every other public university, and even on several other campuses of CUNY.

116.    The public interest militates for the recognition of the Fraternity at CSI since such recognition would vindicate clear constitutional and legal rights of the Fraternity, of its members, the individual Plaintiffs, and of all those who might desire to form or to join organizations with selective and/or single-sex membership.

117.    To the extent the prohibition at CSI of rushing and pledging is designed and intended only to prevent hazing, that prohibition is unconstitutional on its face and as applied since it encompasses a very broad range of rushing and pledging activities that are not hazing, and it is therefore overbroad, not narrowly tailored, impermissibly

restricts and violates the rights to freedom of intimate and expressive association and speech, and is a prior restraint.

## Claims for Legal Relief

**First Claim – Against All Defendants Except CUNY for Prospective Injunctive Relief (Violation of Federal Civil Rights by Refusal to Recognize)**

118.    Defendants Springer, Jackson and Brower are state officials, and Defendant CSI Student Government is -- to the extent its actions or omissions are at issue in this action -- an agent of CUNY/CSI, and Defendants are all subject to the Fourteenth Amendment to the U.S. Constitution, as a result of which they are also subject to the First Amendment to the U.S. Constitution, and these legal authorities prohibit Defendants from violating Plaintiffs' constitutional and legal rights to freedom of (a) intimate association, (b) expressive association, (c) speech, and (d) equal protection of the laws.

119.    The conduct of these Defendants heretofore described was conduct by persons acting under color of state law within the meaning of these words in 42 U.S.C. § 1983, and by their refusal to recognize the Fraternity and to accord it all benefits and privileges of a recognized/chartered student organization at CSI, Defendants have deprived and are continuing to deprive, and each of them has deprived and continues to deprive, Plaintiffs of the exercise of these rights of theirs to freedom of intimate and expressive association, freedom of speech and equal protection of the laws and of the rights and privileges accorded other student organizations at CSI.

120.    As a result, plaintiffs are entitled to prospective injunctive relief against the Defendants other than CUNY under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

Second Claim - Against Defendants Springer and Jackson Individually
(Violation of Federal Civil Rights by Refusal to Recognize)

     121.    Plaintiffs here aver again by reference paragraphs 1 through 119.

     122.    The conduct of Defendants Springer and Jackson heretofore described was in bad faith and has violated and continues to violate clearly established constitutional and statutory rights of Plaintiffs of which a reasonable person would have known based on, *inter alia*, the legal authorities heretofore cited and the highly publicized U.S. Supreme Court decisions in *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000), *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston,* 515 U.S. 557 (1995), and *Healy v. James*, 408 U.S. 169 (1972).

     123.    As a result, plaintiffs are entitled to monetary and injunctive relief against Defendants Springer and Jackson, in their individual capacities, under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

Third Claim – For Prospective Injunctive Relief Against All Defendants Except CUNY
(Anticipatory Relief for Violation of Federal Civil Rights By Unduly Burdensome
Regulation)

     124.    Plaintiffs here aver again by reference paragraphs 1 through 118.

     125.    By imposing requirements on recognized student organizations such as those described in paragraph 92, Defendants have placed and continue to place an undue burden on such organizations' exercise of the rights of privacy and freedom of intimate and expressive association and speech, a burden that would face Plaintiffs upon recognition of the Fraternity.

126.    As a result, Plaintiffs are entitled to anticipatory, prospective injunctive relief against the Defendants other than CUNY under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

Fourth Claim Against All Defendants (Violation of Title IX)

127.    Plaintiffs here aver again by reference paragraphs 1 through 117.

128.    CUNY and CSI are institutions of higher education and receive Federal financial assistance.

129.    Defendants have denied recognition to the Fraternity and the rights and privileges accorded chartered student organizations at CSI to Plaintiffs on the ground that they are a single-sex, all-male organization, which denial constitutes, on the basis of sex, exclusion from participation in, denial of benefits of, and discrimination under an education program or activity receiving Federal financial assistance in violation of Title IX of the Civil Rights Act of 1972, 20 U.S.C. § 1681(a).

130.    As a result, Plaintiffs are entitled to relief in this action.

Fifth Claim Against All Defendants Except CUNY (Violation of the New York State Constitution)

131.    Plaintiffs here aver again by reference paragraphs 1 through 119 and 125.

132.    As a result, Plaintiffs are entitled to prospective and anticipatory injunctive relief pursuant to 42 U.S.C. § 1988(a) and the Bill of Rights (Article I) of the New York State Constitution.

Sixth Claim Against All Defendants (Violation of New York State Public Accommodation Act)

133.  Plaintiffs here aver again by reference paragraphs 1-117.

134.  Defendants' denial of recognition to the Fraternity and of the rights and privileges accorded chartered student organizations at CSI to the Plaintiffs constitutes the refusal, withholding, and denial of full and equal accommodations, advantages, facilities and privileges of a public accommodation in violation of the New York Public Accommodation Act, N.Y. Civil Rights Law § 40.

135.  At or before the commencement of this action, notice of this claim has been served upon the New York Attorney General.

136.  As a result, Plaintiffs are entitled to relief under 42 U.S.C. § 1988(a) and Section 41 of the New York Civil Rights Law.

Seventh Claim Against All Defendants (Violation of the New York State Anti-Discrimination Law)

137.  Plaintiffs here aver again by reference paragraphs 1-117.

138.  Defendants' denial of recognition to the Fraternity and of the rights and privileges accorded chartered student organizations at CSI to Plaintiffs on the ground that they are a single-sex, all-male organization constitutes discrimination in their civil rights and violation of their right to equal protection of the laws of New York because of their sex in violation of Section 40-c of the New York Civil Rights Law.

139.  At or before the commencement of this action, notice of this claim has been served upon the New York Attorney General.

NYC01/7775756v1

140.     As a result, Plaintiffs are entitled to relief under 42 U.S.C. § 1988(a) and Section 40-d of the New York Civil Rights Law.

Eighth Claim Against All Defendants (Attorney's and Expert Fees)

141.     Plaintiffs here aver again by reference paragraphs 1-140.

142.     Plaintiffs are therefore entitled to a reasonable attorney's fees and their expert fees as part of their costs pursuant to 42 U.S.C. § 1988(b) and (c).

WHEREFORE plaintiffs demand:

(1)     pursuant to Fed. R. Civ. P. 65, 42 U.S.C. § 1983, and/or 42 U.S.C. § 1988(a) and Article I of the New York State Constitution, a preliminary injunction requiring Defendants other than CUNY to recognize the Fraternity on behalf of CSI, to grant the Fraternity a charter and all the rights and privileges accorded recognized/chartered student organizations at CSI, and to refrain from discriminating against Plaintiffs on the basis of their membership practices or on any other unlawful basis;

(2)     pursuant to 42 U.S.C. § 1983, and/or 42 U.S.C. § 1988(a) and Article I of the New York State Constitution, a permanent injunction requiring Defendants other than CUNY to recognize the Fraternity on behalf of CSI, to grant the Fraternity a charter and all the rights and privileges accorded recognized/chartered student organizations at CSI, and to refrain from discrimination against plaintiffs on the basis of their membership practices or on any other unlawful basis;

(3)   pursuant to Fed. R. Civ. P. 65 and 20 U.S.C. § 1681(a), a preliminary injunction requiring Defendants to recognize the Fraternity, to grant it a charter and all the rights and privileges accorded recognized/chartered student organizations at CSI, and to refrain from discriminating against plaintiffs on the basis of their all-male membership practices;

(4)   pursuant to 20 U.S.C. § 1681(a), a permanent injunction requiring Defendants to recognize the Fraternity, to grant it a charter and all the rights and privileges accorded recognized/chartered student organizations at CSI, and to refrain from discrimination against plaintiffs on the basis of their all-male membership practices;

(5)   judgment pursuant to 42 U.S.C. § 1983 against Defendants Springer and Jackson in their individual capacities awarding Plaintiffs damages in an amount determined to be appropriate after trial;

(6)   judgment pursuant to 20 U.S.C. § 1681(a) against all Defendants and each of them awarding Plaintiffs damages in an amount to be determined to be appropriate after trial;

(7)   declaratory judgment against all Defendants except CUNY pursuant to 28 U.S.C. §§ 2201-02 declaring that Plaintiffs have the right to recognition and a charter from CSI notwithstanding Plaintiffs' decisions to be a selective, single-sex, all-male organization and to engage in rushing and pledging, and granting such other and further relief as is necessary and proper;

(8)   anticipatory relief against all Defendants except CUNY pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988(a) and Article I of the New York State

- 32 -

NYC01/7775756v1

Constitution, and 28 U.S.C. §§ 2201-02, declaring that CSI's regulations

concerning student organizations prohibiting rushing and pledging, and

requiring that they publicize all meetings, that all meetings be open to all

students, that minutes of all meetings be submitted to CSI and CSI Student

Government and that the student organizations may not charge dues to

members are unconstitutional, illegal and unenforceable and enjoining any

enforcement of those regulations against Plaintiffs;

(9)   judgment against each of the Defendants pursuant to 42 U.S.C. § 1988(a)

and Section 41 of the New York Civil Rights Law awarding each Plaintiff no

less than one hundred dollars and not more than five hundred dollars;

(10)  judgment against each of the Defendants pursuant to 42 U.S.C. § 1988(a)

and Section 40-d of the New York Civil Rights Law awarding each Plaintiff

no less than one hundred dollars and not more than five hundred dollars;

(11)  judgment against the Defendants pursuant to 42 U.S.C. § 1988(b) and (c)

awarding Plaintiffs their attorney's fee, expert fees, disbursements and costs;

and

(12)  judgment against the Defendants granting Plaintiffs such other and further

relief as to the Court is just and proper.

Dated:  August / 7 , 2005

ALSTON & BIRD LLP

By _____

Gregory F. Hauser (GH-3902)
Attorneys for Plaintiffs
90 Park Avenue
New York, New York 10016
212-210-9539

- 33 -