UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

CHI IOTA COLONY OF ALPHA EPSILON PI FRATERNITY, ALEX KHAYCHUK, KONSTANTIN NOVODORSKY, VITALY USHERENKO, GENNADY AKSELRUD, ALEKSANDER BARANOV, DAVID BOROWIK, ROMAN BURTMAN, DANIEL KANE, MIKE LANTINO, JOSHUA MALEK, DANIEL MARKOWITZ, EVAN McKIERNAN, RYAN RICHMOND, BILLY RUPPERT, BRIAN THOMSON, JONATHAN TORRES, STANISLAV VERBITSKY and MOSHE ZEITOUNI,

        Plaintiffs,

vs.

CITY UNIVERSITY OF NEW YORK, MARLENE SPRINGER, CAROL L. JACKSON, and CAROL BROWER,

        Defendants.

---

No.: 05 CV 2919 (DLI)(MDG)

**DECLARATION**

ALEX KHAYCHUK declares as follows:

1.   I am a male student at the College of Staten Island and a member and the president of Plaintiff Chi Iota Colony of Alpha Epsilon Pi Fraternity. I make this affidavit in support of the Plaintiffs' Motion for a Preliminary Injunction, and in doing so I have reviewed the Plaintiffs' Amended Complaint and its Exhibits.

Parties

2.   Plaintiff Chi Iota Colony of Alpha Epsilon Pi Fraternity (hereinafter the "Chi Iota Colony" or the "Fraternity") is an unincorporated association made up entirely and exclusively of male college students. Chi Iota Colony is a college social fraternity

group, affiliated with Alpha Epsilon Fraternity, Inc. ("AEPi"), and in the process of becoming a chapter of AEPi.

3.  Plaintiff Konstantin Novodorsky is a male student at the College of Staten Island and a member and the vice president of the Chi Iota Colony.

4.  Plaintiff Vitaly Usherenko is a male student at the College of Staten Island and a member and the treasurer of the Chi Iota Colony.

5.  Plaintiffs Gennady Akselrud, Aleksander Baranov, David Borowik, Roman Burtman, Daniel Kane, Mike Lantino, Joshua Malek, Daniel Markowitz, Evan McKiernan, Ryan Richmond, Billy Ruppert, Brian Thomson, Jonathan Torres, Stanislav Verbitsky, and Moshe Zeitouni are male students at the College of Staten Island and members of the Chi Iota Colony.

6.  I shall sometimes hereinafter refer to the foregoing Messrs. Novodorsky through Verbitsky and myself together as the "individual Plaintiffs".

7.  The College of Staten Island ("CSI") is a senior college unit of Defendant City University of New York ("CUNY"), located at 2800 Victory Boulevard, Staten Island, Richmond County, New York.

8.  Defendant Marlene Springer is the President of CSI and, to the best of my information and belief, has ultimate control over and responsibility for, *inter alia*, CSI's policies and procedures in non-academic areas, including those applicable to student organizations.

9. To the best of my information and belief: Defendant Carol L. Jackson is the Vice President for Student Affairs of CSI; CSI's Division of Student Affairs, over which Defendant Jackson presides and as to which she reports to Defendant Springer, includes the Office of Student Life; and Defendant Jackson's responsibilities include control of that office and formulation of, oversight of, some level of control over, and the administration and enforcement of CSI's policies and procedures applicable to, *inter alia*, student organizations.

10. Defendant Carol Brower is the Director of the Office of Student Life at CSI and, to the best of my information and belief, her responsibilities include administration and enforcement of CSI's policies and procedures applicable to student organizations.

11. To the best of my information and belief, the CSI Student Government is an entity established by CSI, with its principal place of business at CSI, to which CSI has delegated certain authority over student organizations at CSI.

The Fraternity

12. AEPi is an international college social fraternity, called "international" because it includes chapters at multiple college or university campus in the United States and Canada. A copy of AEPi's Constitution is annexed to the Amended Complaint as Exhibit 1; see Art. I § 1 at 2.

13. A fraternity colony is a newly formed group that has as its goal, and is in the process of, becoming a fraternity chapter by meeting the requirements established by the larger, national or international fraternity from which it seeks chapter status.

14. To the best of my information and belief, in or about August 2002, a CSI student at a Hillel leaders event approached AEPi's booth and indicated an interest in founding a chapter of AEPi at CSI. That student recruited several other CSI students after the Fall semester started and, in or about October 2002, contacted AEPi international headquarters and a meeting with a member of AEPi's headquarters staff to begin the colonization process, as part of which the individual Plaintiffs became members of the Chi Iota Colony.

15. Plaintiffs have chosen to affiliate with AEPi because of its nature, values and purposes.

16. The Fraternity and AEPi are both non-profit organizations.

17. The Constitution of AEPi authorizes each of its undergraduate colonies and chapters to confer membership upon only male college or university students. Am. Compl. Ex. 1 Art. I § 1(a)(1) at 2.

18. If the Fraternity is to maintain its affiliation with, and eventually meet its goal of becoming a chapter of, AEPi, it may have as members only male students.

19. The Fraternity has established its purposes and membership requirements consistent with those of AEPi. *Compare* Ex. 1 Preamble at 2, *with* the Preamble to the Fraternity's By-laws, a copy of which is included as a part of Exhibit 2 to the Amended Complaint.

20. My understanding is that AEPi prefers that its colonies and chapters have recognition from the host colleges and universities.

NYC01/7775734v4

The Intimate Nature of the Fraternity

21. The Fraternity is a single-sex, all-male social organization that selects its own members consistent with its purposes and on other bases as the members, currently the individual Plaintiffs, decide.

22. To the best of my information and belief, CSI has approximately 12,500 students.

23. The Fraternity has eighteen CSI student members.

24. While the Fraternity has placed no limit on its membership size, because CSI is a heavily commuter campus, the Fraternity is unlikely ever to exceed fifty members, which would still be relatively small compared to the overall size of CSI's student body. In fact, the largest we have ever been to date is twenty members.

25. The Fraternity exercises a high degree of selectivity in decisions to begin and to maintain affiliation by individuals with the Fraternity, and prospective members must exercise their own selectivity in deciding to become members by expressing an interest and willingness to commit themselves to the purposes of the Fraternity.

26. No man who has already joined another general college social fraternity may become a member of AEPi, and the Constitution of AEPi states that the conferral of membership is for life unless a man is expelled for disciplinary reasons. Am. Compl. Ex. 1, Art. I §§ 2-3 at 3. Thus, membership in AEPi is essentially permanent and precludes membership in any other college social fraternity, further necessitating selectivity in both

invitations to membership issued by the Fraternity and in decisions whether to accept membership by those who receive such invitations.

27. Rush is the name for a process by which a fraternity group communicates with prospective members and recruits and selects new members and during which prospective members evaluate the group and their own interest in joining. *See also* Chapter 6 of AEPi's membership manual, relevant portions of which are annexed to the Amended Complaint as Exhibit 3, at 51-55.

28. Pledging is the name for a period of transition between (a) the acceptance of an invitation to membership in a fraternity chapter/colony and (b) the conferral of full membership. Pledging, also called pledgeship or the pledge period, is typically of several weeks duration. In AEPi, it is expected that the pledge period be of either two and one half weeks or five weeks duration, and it is five weeks long at the Chi Iota Colony. During pledgeship, the new, transitional member, or "pledge", is taught about the fraternity's history, purposes, values, and operations in details and he and the members get to know each other better. *See also* Am. Compl. Ex. 3 at 23-41. During pledgeship, it is relatively easy for the pledge or the fraternity chapter/colony to end the process of his becoming a member; after the close of pledgeship and the private ceremony in which full membership is bestowed, it requires an elaborate and formal process, upon a limited number of grounds, for a member to be expelled. *Compare* Am. Compl. Ex. 3 at 40-41 *with* Am. Compl. Ex. 1, Art. XI § 2 at 15-16.

29. Rushing and pledgeship are essential parts of the Fraternity's selectivity and maintenance of the mutual compatibility and congeniality among its members.

NYC01/7775734v4

Rushing and pledging are designed and intended to insure to the extent possible that the only men who become members are those who the group is certain it wishes to become full members and who are themselves certain that they wish to become full members of the Fraternity.

30. Neither rushing nor pledgeship properly includes hazing, and AEPi prohibits hazing in any AEPi activities. Am. Compl. Ex. 1, Art. XII §§ 1-2 at 16; Am. Compl. Ex. 3 at 27-28 & 102.

31. The initial invitation to become a pledge at the Chi Iota Colony is made by the Executive Board of the Fraternity, made up of five elected officers (including me as president), after consultation with the membership.

32. One of the Fraternity's purposes is a lifelong interpersonal bond termed brotherhood, and achieving that purpose requires that the Fraternity be able to exercise selectivity in membership.

33. Selectivity enables the Fraternity to be an organization in which the relationships among the individual plaintiffs, the members, are continuous, close and personal. This brotherhood results in deep attachments and commitments to the other members of the Fraternity among whom is shared a community of thoughts, experiences, beliefs and distinctly personal aspects of their lives.

34. The selective, single-sex, all-male nature of the Fraternity is essential to achieving and maintaining the congeniality, cohesion and stability that enable it to

function as a surrogate family and to meet social, emotional and cultural needs of its members.

35. Furthermore, non-platonic, *i.e.*, romantic relationships between members and the inevitable jealousies and other conflicts would pose a grave threat to the group's brotherhood, thus, maintaining the Fraternity's brotherhood is best achieved by maintaining an all-male membership.

36. The purposes of AEPi, from the Preamble to its Constitution, include "lasting friendships . . . [and] [t]he pursuits of those benefits which derive . . . from pleasant application to . . . general social undertakings."

37. A primary purpose of the Fraternity is congeniality, and the Fraternity's members, *i.e.*, the individual Plaintiffs, must therefore be free to consider social compatibility in deciding whether to invite a man to become a member and to reject as members those who, in the view of the current members, would be socially incompatible or otherwise pose a threat to the congeniality within the Fraternity.

38. The individual Plaintiffs consider a host of factors in addition to congeniality and social compatibility in deciding whether to invite a man to become a member, information that is obtained and evaluated during rush, including the man's reasons for being interested in joining (including the level of interest and potential for commitment to AEPi's values and purposes), existing relationships with members, shared personal affinities, his potential for loyalty to the Fraternity and other members, an assessment of his character, the perceived potential for mutual affection, admiration and

respect among them, and the perceived potential to work together with them in personal social and emotional development and in the Fraternity's activities and programs.

39.     Adhering to AEPi's purposes and continuing and developing the Plaintiffs' desired affiliation with AEPi necessitate that the Fraternity continue its selectivity and adhere to single-sex, all-male membership.

40.     The Fraternity excludes non-members from: meetings at which it discusses whether to offer membership to a man; meetings at which the ceremony commencing pledgeship is performed; meetings at which the ceremony initiating a man into full membership is performed; meetings at which it considers terminating a man's membership; and from certain other business meetings.

The Expressive Nature of the Fraternity

41.     As can be seen from its membership manual and web site, AEPi was founded as a non-discriminatory fraternity for Jewish college men. Today, as can be seen, *inter alia,* on the front page of AEPi's web site, www.aepi.org (selected pages from which are attached to the Amended Complaint as Exhibit 4), it proclaims itself as "the Jewish Fraternity of North America". AEPi's mission statement, which is available as part of the same web site and a copy of which is included in Exhibit 4 to the Amended Complaint, expounds in detail on the ties between AEPi and the Jewish community and culture. Among the specific purposes set forth in the mission statement for AEPi is the development of "leadership for the future of the American Jewish community" and to help "reverse the growing trend among our young people to abandon Judaism at this critical time." More generally, the mission statement concludes: "our basic purpose is to

provide the opportunity for a Jewish man to be able to join a Jewish organization whose purpose is not specifically religious, but rather social and cultural in nature." AEPi maintains partnerships with six other non-profit organizations, which are listed on AEPi's web site (a copy of the page is included in Exhibit 4 to the Amended Complaint); all but one are Jewish in nature. AEPi recommends several philanthropies to its chapters/colonies, which are also listed on its web site (a copy of the page is also included in the same Exhibit 4); all are for the benefit of causes that are part of the Jewish community. AEPi's membership manual shows the strongly Jewish nature of AEPi. Am. Compl. Ex. 3 at 5, 7-8, 13-14, 19-22, 29, 34, 45, 47, 52-54 & 78.

42. AEPi's purposes and values also include many others that have traditionally been the purposes and values of college social fraternities: brotherhood; character; learning and scholarship; leadership, financial responsibility; social/community service; campus participation; and personal growth, including social development. Am. Compl. Ex. 3 at 5-8, 27, 34-35, 38-39, 42-45, 46-48, 56-63 & 69-73, as well as a set that AEPi has chosen for its self: honesty; perseverance; mutual helpfulness; faith; and humility, *id.* at 25-26, and "personal perfection, a reverence for God and an honorable life devoted to the ideal of service to all mankind; lasting friendships and the attainment of nobility of action and better understanding among all faiths; The pursuit of those benefits which derive from vigorous participation in university and college activities and from pleasant application to literary, cultural and general social undertakings; and The unbiased judgment of our fellows, not by their rank nor worldly goods, but by their deeds and their worth as men" Am. Compl. Ex. 1, Preamble at 2. AEPi expects pledge

NYC01/7775734v4

education to include inculcation of these values and purposes. Am. Compl. Ex. 3 at 29 & 35.

43. Among the Fraternity's purposes and activities are the inculcation of the traditional values of men's college social fraternities generally and of AEPi specifically, community service, and the expression of Jewish culture.

44. The Fraternity members are, for the most part, non-practicing Jews. We, including pledge members, meet weekly with a Rabbi from the Jewish Awareness Movement ("JAM") at CSI to learn about Jewish tradition, history and practices. We have been involved in other JAM activities, including building a sukkah for the Jewish celebration of Sukkot. The Fraternity uses contacts made at JAM meetings to recruit new members. The Fraternity is currently planning a future fund raising activity for the benefit of Ethiopian Jews.

45. The purpose of philanthropic and community service is to improve morals, ethics and citizenship, and to instill and to model a desire for self-improvement and a commitment to a larger community.

46. Rush is the time when the expressive purposes of the Fraternity are communicated to prospective members and each prospective member's interest in the expressive purposes of the Fraternity is evaluated, and pledgeship is the time when the expressive purposes of the Fraternity are taught and the commitment of each prospective member to those purposes is sought, developed and tested.

NYC01/7775734v4

47. Adhering to and accomplishing the expressive purposes of AEPi and the Fraternity necessitate that the Fraternity continue its selectivity to insure that only those committed to those purposes become members, so that there is no dilution or lessening of the Fraternity's commitment to those purposes and its ability to adhere and to accomplish them.

CSI Recognition of Student Clubs and Organizations

48. On a page that is part of CSI's web site, the CSI proclaims to prospective students that "we are determined to serve your needs." www.csi.cuny.edu/prospectivestudents/index.html.

49. On its page that is part of CSI's web site, the CSI Division of Student Affairs claims that its programs and services "are provided by professionals committed to student's [sic] intellectual, emotional, social, cultural, and recreational development." www.csi.cuny.edu/studentaffairs.

50. On its page that is part of CSI's web site, the CSI Office of Student Life states that its "goal is to enhance the CSI students' education by providing a variety of co-curricular opportunities designed to facilitate and encourage student responsibility for their own intellectual, social, emotional, spiritual and cultural identity." www.csi.cuny.edu/currentstudents/studentlife.

51. Social organizations, such as social fraternities, are a means by which college students take responsibility for their own social and emotional development and identity.

- 12 -

52.     The individual Plaintiffs have formed and joined the Fraternity for, *inter alia*, our social needs, development, identity and benefits.

53.     The Fraternity and its affiliation with AEPi are a means for us, the individual Plaintiffs, to take responsibility for our own spiritual and cultural development and identity.

54.     CSI and the other Defendants maintain a program by which CSI student organizations are officially recognized by granting them a charter. According to CSI's Club Chartering Packet, a copy of which is annexed as Exhibit 5 to the Amended Complaint, at 3:

> The CSI Student Government and the Office of Student Life encourage students to charter clubs to design and implement programs, events, and activities which support, enrich, extend, and amplify the goals of CSI's educational mission. Involvement in these types of groups present [*sic*] students with the opportunity to broaden their learning, obtain leadership and interpersonal skills, and develop a commitment to service. Student participation in such organizations attracts new students to our campus and helps them to be an active part of it. Student clubs should strengthen campus-community relations, improve inter-institutional communications, and facilitate students' acquisition of skills, which will be transferable to other areas of their lives.

55.     According to the same packet, at 3:

> All clubs at the College of Staten Island must be chartered by the CSI Student Government and officially recognized by the Office of Student Life on a yearly basis.
>
> The benefits and privileges afforded to recognized student clubs include:
> › The use of CSI facilities and services
> › Eligibility for insurance through the CSI Association
> › The right to use the College of Staten Island name in conjunction with the name of your group
> › The right to solicit contributions, underwriting and advertising outside the College (provided proper College guidelines and procedures are followed and only with the authorization of the Director of Student Life)

- 13 -

> › The use of all CSI approved bulletin boards to publicize events
> › Inclusion of events in monthly calendars including CLUENEWS upon approval by the Office of Student Life
> › To arrange news coverage for events of public interest through the Office of Student Life
> › The opportunity to request a desk, or workspace in the Campus Center, or weekly meeting space in one of the academic buildings
> › The opportunity to apply for special funding through the CSI Student Government
> › the exclusive use of a centralized mailbox located in Campus Center (1C), room 207.

56. These are substantial rights and privileges accorded only to groups recognized by CSI and chartered by the CSI Student Government. These rights and privileges are a substantial support to, and their denial a substantial burden on, the formation, existence, maintenance and growth of student organizations at CSI.

57. To the best of my information and belief, the CSI Office of Student Life makes the final decision on recognition, Am. Compl. Exhibit 5 at 4, and the decision is thus under the control of Defendants Springer, Jackson and Brower.

58. CSI has extensive requirements for eligibility for recognition. Am. Compl. Exhibit 5 at 5-6. Of particular relevance, and specifically at issue in this action, are three of those requirements (*id.* at 6):

> In order for an organization to be officially recognized at the College of Staten Island, membership and participation in it must be available to all eligible students at the College. In addition, in order to be recognized, each organization must agree not to discriminate on the basis of . . . . gender . . . .
>
> Furthermore, the practices commonly referred to as pledging and rushing are not permitted.

- 14 -

59. According to the CSI web site, CSI has recognized over 45 clubs and organizations. www.csi.cuny.edu/currentstudents/studentlife/clubs.html.

CSI's Denial of Recognition to the Fraternity

60. On or about March 3, 2004, the Fraternity applied for recognition by CSI by filing an application to charter and supporting materials. A copy of the application and supporting materials is annexed to the Amended Complaint as Exhibit 2.

61. On or about March 29, 2004, Defendant Brower notified the Fraternity that recognition would be denied because the Fraternity excludes women and practices rushing and pledging. A copy of that notice is annexed to the Amended Complaint as Exhibit 6.

62. Defendants' refusal to recognize the Fraternity and to grant it a charter has deprived the Fraternity and us, the individual Plaintiffs, of the aforementioned benefits and privileges of recognition.

63. To become and to remain a fully viable entity in a campus community in which new students enter on a regular basis, the Fraternity must possess the means of communicating with these new students, as well as others, about the Fraternity's existence, its purposes and the opportunities for membership, and its ability to do so and to pursue its stated purposes is substantially burdened and limited by denial of access to the customary channels for communicating with the campus community.

64. To become and to remain a fully viable entity at a largely commuter campus, the Fraternity must have access to campus facilities for the convenience of its

members, of those whom they would like to interest in membership, and of those who might be interested in becoming members.

65. The Fraternity's ability to recruit members at CSI is particularly hindered by lack of access to CSI bulletin boards, to desk space in the Campus Center, and to meeting space in a CSI building, and the inability to participate in freshman orientation programs, all of which are accorded to recognized student organizations.

66. Defendants' refusal to recognize the Fraternity and to grant it a charter is a burden on the Plaintiffs' right to recruit additional members and to operate and denies them rights and privileges necessary to the maintenance of the Fraternity's existence and its growth.

67. Defendants' refusal to recognize the Fraternity and to grant it a charter is a burden on the ability of CSI students not already members of the Fraternity who might have an interest in the Fraternity and membership from learning about them and considering whether to join the Fraternity.

68. My impression and belief is that the requirement that all CSI student organizations maintain their membership open to all students is an imposition by Defendants of a single, restrictive, rigid, intolerant ideology and philosophy concerning student organizations, and the refusal to recognize student organizations with a selective and/or single-sex membership is intended to suppress an ideology or philosophy that would tolerate, condone, endorse or support such organizations.

NYC01/7775734v4

69. The Fraternity has complied with all reasonable housekeeping rules of CSI.

70. Any additional attempt by the Fraternity to apply for recognition and chartering at CSI would be futile since the Fraternity remains a selective, single-sex organization.

71. To the best of my information and belief, Defendants have intentionally denied the Fraternity and its members, the individual Plaintiffs, the rights and privileges that flow from recognition and chartering at CSI because we have chosen to be a selective association, a philosophy of which Defendants disapprove and a philosophy and state of existence that they desire to suppress.

72. To the best of my information and belief, Defendants have intentionally denied the Fraternity and its members, the individual Plaintiffs, the rights and privileges that flow from recognition and chartering by CSI because we have chosen to be single-sex, all-male association, a philosophy of which Defendants disapprove and a philosophy and a state of existence that they desire to suppress.

73. To the best of my information and belief, Defendants have intentionally denied the Fraternity and its members, the individual Plaintiffs, the rights and privileges that flow from recognition and chartering a CSI because we have chosen to engage in rushing and pledging as means to be selective, to communicate and to fulfill our chosen purposes and goals, to inculcate our values, and to insure that all members are fully committed to our purposes and goals, including the expression of Jewish culture.

NYC01/7775734v4

74.     Among the actual and, to the best of my information and belief, intended effects of Defendants' refusal to recognize and to charter the Fraternity is the deterrence of the Fraternity and us, the individual Plaintiffs, from associating and communicating with each other and with other CSI students and of other CSI students from associating and communicating with the Plaintiffs.

Additional Burdens Imposed at CSI on Associational Rights

75.     There are extensive regulations imposed by Defendants on CSI student organizations, including: the mandatory submission of minutes of all business meetings to the Office of Student Life and the CSI Student Government; the publicizing of business meetings; that all such meetings be open to all CSI students; and a prohibition on charging dues.  Am. Compl. Exhibit 5 at 8.

76.     If the Fraternity were to be recognized and bound by these rules, they would limit the number and nature of our activities, would be an invasion of our right to associational privacy and an infringement of our right to associational autonomy, constitute compelled speech, and as such would be a burden on our rights to freedom of association and speech.

77.     CSI claims to be "an equal Opportunity and Affirmative Action institution" and that it "does not discriminate on the basis of [*inter alia*] sex, . . . religion, . . . or ethnic origin, . . . in its . . . access to programs and administration of educational policies." www.csi.cuny.edu/studentaffairs/rightsandresponsibilities.html; Appendix vi. Yet, when a group of CSI students, we, the individual Plaintiffs, decided to form a group,

the Fraternity, on a single-sex basis and selectivity based upon, *inter alia*, religion and ethnic origin, Defendants have refused to recognize the group by granting it a charter.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 9, 2005

_____
ALEX KHAYCHUK

- 19 -

NYC03/7775734v4